360 P.2d 697

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Woodrow W. WENDLER, Defendant-Appellant.**

**No. 8741.**

Supreme Court of Idaho.

March 23, 1961.

Vernon K. Smith, Boise, for appellant.

Frank L. Benson, Atty. Gen., Dwight F. Bickel and William E. Swope, Asst. Attys. Gen., for respondent.

TAYLOR, Chief Justice.

About 9:00 p. m. on March 8, 1958, defendant (appellant) was driving an automobile eastward on U. S. Highway 30 in a suburban area west of Boise. In the information charging negligent homicide it is alleged that defendant at the time was operating the car in reckless disregard of the safety of others; that he was intoxicated; that he was driving, at an excessive and dangerous speed of approximately 75 to 80

miles per hour, astride the center line of the highway, and that the prima facie speed limit upon the highway at that place was 35 miles per hour. The car driven by defendant collided with the left rear of an automobile occupied and driven by one Lampert. The portion of the highway on which the events involved occurred is also known as Fairview Avenue and is a four lane way. The Lampert car, also traveling east, had either slowed or stopped near or on the center line preparatory to making a left turn off the highway to a business establishment on the north side, when it was struck from the rear. The collision resulted in injuries to Lampert from which he died the next day.

Upon trial defendant was convicted of negligent homicide. From the judgment entered thereon he prosecutes this appeal.

The statute defining and fixing penalty for negligent homicide is as follows:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

"(b) Any person convicted of negligent homicide shall be punished by imprisonment for not more than one year or by fine of not more than $1000, or by both such fine and imprisonment." I.C. § 49-1101.

The above was originally § 53, c. 273, Laws of 1953. The title of the 1953 enactment was in part as follows:

"An Act

"Regulating Traffic on the Highways and Defining Certain Crimes in the Use and Operations of Vehicles; * * * Defining Negligent Homicide and Prescribing a Penalty Therefor; * * *"

Defendant cites a number of provisions of the act to support his contention that the "one subject" or primary purpose of the act was "regulating traffic on the highways." He then argues that since the section defining negligent homicide does not limit the acts constituting the crime to such as occur on the highways, it goes beyond the subject of the act as expressed in the title, and makes the operation of a vehicle in reckless disregard of the safety of others a crime, though it occur in "open fields, or private property, or on the open range." Thus reasoning, defendant concludes that the act violates Article 3, Section 16 of the Constitution, and is void.

The constitutional provision is as follows:

"Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject

"shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

It is not necessary to a decision in this case to determine whether the subject of the act is limited to "regulating traffic on the highways" or whether it is broader in scope, as indicated by § 49–522 (§ 22, c. 273, L. 1953); nor is it necessary to determine whether the act embraces more than one subject. The crime charged here arises out of the operation of a vehicle "on the highway," which is within the subject expressed in the title, even when restricted as defendant contends it should be.

■ Furthermore, defendant is not in a position to urge the unconstitutionality of the act as applied to the operation of vehicles off the highways. The act is not being unconstitutionally applied to him. McGinniss v. Davis, 7 Idaho 665, 65 P. 364; Kimbley v. Adair, 32 Idaho 790, 189 P. 53; Williams v. Baldridge, 48 Idaho 618, 284 P. 203; In re Allmon, 50 Idaho 223, 294 P. 528; In re Brainard, 55 Idaho 153, 39 P.2d 769; Twin Falls Canal Co. v. Huff, 58 Idaho 587, 76 P.2d 923; Albrethsen v. State, 60 Idaho 715, 96 P.2d 437; State v. Heitz, 72 Idaho 107, 238 P.2d 439; Greer v. Lewiston Golf & Country Club, Inc., 81 Idaho 393, 342 P.2d 719.

"'It is a fundamental principle of constitutional law that a person can be heard to question the constitutionality of a statute only when and insofar as it is being, or about to be, applied to his disadvantage. Cases cited. It follows "that one may not urge the unconstitutionality of a statute who is not harmfully affected by the particular feature of the statute alleged to be in conflict with the constitution."' Tooz v. State, [76] N.D. [599], 38 N.W.2d 285, at page 290." Poffenroth v. Culinary Workers Union Local No. 328, 71 Idaho 412, 414, 232 P.2d 968, 969.

■ Defendant also contends that I.C. § 49–1101 is unconstitutional for uncertainty and on the ground that it sets forth no standard of conduct by which one may know what act or acts constitute a violation of the statute. In State v. Aims, 80 Idaho 146, 326 P.2d 998, we held that this statute is not unconstitutional on such grounds. Cf. State v. Henry, Idaho, 359 P.2d 514.

Defendant assigns as error the admission in evidence of state's exhibit 2, which is an order of the state board of highway directors fixing and designating 35 miles per hour as the reasonable, safe, prima facie speed limit upon that portion of U. S. Highway 30, where the collision involved occurred. Defendant objected to the admission of the exhibit on the ground that the state had made no showing that the department of highways had determined the speed

limit "upon the basis of an engineering and traffic investigation" as required by the statute authorizing the department to fix certain specific, local, prima facie speed limits. I.C. § 49–702.

 The law presumes that the board of highway directors discharged its duty lawfully and in the manner prescribed by statute. 20 Am.Jur., Evidence, §§ 171, 173; 42 Am.Jur., Public Administrative Law, § 240; Howard v. Missman, 81 Idaho 82, 337 P.2d 592. The presumption of regularity and legality of official acts is applicable in criminal cases. State v. Walters, 61 Idaho 341, 102 P.2d 284; People v. Lindley, 26 Cal.2d 78, 161 P.2d 227; State v. Miller, 71 Ariz. 140, 224 P.2d 205; 22 C.J.S. Criminal Law § 589, p. 906 et seq. The offer of the exhibit was supported by the rebuttable presumption that the order was based on the required engineering and traffic investigation. The order recites:

"Whereas, upon the basis of an engineering and traffic investigation and the recommendation of the Traffic Engineer, it is deemed advisable that the prima facie speed limits on the hereinafter rural sections of the State Highway System be altered to the hereinafter described limits."

In an analogous situation involving a ruling of the National Labor Relations Board, the Supreme Court of the United States said:

"* * * In light of the authority with which Congress has endowed the Board and with due regard to the conscientiousness which we must attribute to another branch of the Government, we cannot reject its explicit avowal that it did take into account evidence which it should have considered unless an examination of the whole record puts its acceptance beyond reason." National Labor Relations Bd. v. Donnelly Garment Co., 330 U.S. 219, 67 S. Ct. 756 at page 762, 91 L.Ed. 854, at page 863.

 The order bears the facsimile signatures of all the members of the board. It is certified by the secretary and custodian of the records of the board, and bears its seal. No objection was made on the ground the copy was secondary evidence. The court would take judicial notice of the order, and of the fact that the section of highway to which it relates is a part of the "state highway system." I.C. §§ 9–101, 40–109, 49–702; Probart v. Idaho Power Co., 74 Idaho 119, 258 P.2d 361; In re Application of Union Pacific R. Co. etc., 64 Idaho 597, 134 P.2d 1073; Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178.

 Defendant complains that he was not afforded an opportunity "to cross-ex-

amine relating to what, if any, engineering and traffic investigation was made." It is not made clear by defendant's brief whether he contends that the order of the highway department is a "report or finding," within the meaning of I.C. § 9–318. However, assuming that such is defendant's position and further assuming that the document is a "report or finding," rather than an "acts of the executive," under I.C. § 9–315—which we do not decide—no subpoena was sought by the defendant to procure attendance of the officers or agents of the department, who made the report or finding or furnished the information used therein, for cross-examination. Further, defendant was not prejudiced by the admission of the exhibit. In fact, defendant could not make a showing of prejudice in view of the uncontradicted evidence to the effect that the section of highway where the collision occurred was in an "urban district" as defined by I.C. § 49–518. As such, the 35 mile prima facie speed limit thereon was also fixed by I.C. § 49–701. The exhibit was properly admitted. I.C. § 9–315.

■ While testifying as a witness for the state, under cross-examination by defendant's counsel, deputy sheriff Cummings made the statement that "there was a scratch, what we would call a scratch" on defendant's right forearm. Defendant's counsel—endeavoring to support his contention that at the scene of the collision defendant's conduct, or "dazed condition," resulted from severe cuts and bruises rather than from intoxication as contended by the state—asked the defendant to approach the witness and expose his arm. The court refused to permit the exhibition and the ruling is assigned as error. The defendant had not testified and there was no showing or offer to show on the part of the defense that the scars which he proposed to exhibit to the witness resulted from the collision, and although the defendant thereafter did become a witness in his own behalf, he did not testify concerning the origin of the scars, nor did he exhibit the scars to the jury. The court did not err in this ruling.

■ Upon cross-examination of deputy sheriff McIntyre defendant's counsel elicited an answer to the effect that defendant appeared dazed, and later in the same cross-examination the witness testified the defendant "appeared intoxicated." Defendant's counsel then asked that the reporter read the record of the witness' previous answer. The court ruled that counsel would be required to recall what the witness had said without the aid of the reporter's notes. The ruling is assigned as error. The trial court has a wide discretion in the conduct of the trial. Cardoza v. Cardoza, 76 Idaho 347, 282 P.2d 475. The jury heard the two conflicting statements made by the witness and was in a position to judge his verity and accuracy as affected by such testimony without a repetition of the first

answer. Defendant was not prejudiced by the ruling.

■ Upon cross-examination of plaintiff's witness Ashton, defendant sought to have admitted in evidence defendant's exhibit D, a rough sketch of the scene of the collision and a business establishment on the north side of the highway. The sketch was made by counsel for defendant upon the cross-examination of the same witness at the preliminary hearing. The purpose was to show that at the preliminary hearing the witness had testified to the location of the parked car, in which she was sitting at the time of the collision, at a point from which her view of the events leading up to the collision would be obstructed by a nearby building, thereby discrediting her testimony that she saw defendant's car approaching the scene at a speed between 75 and 80 miles per hour. Defendant contends that on the trial the witness located the parked car a little farther to the east where her view would not be thus obstructed, and thus the offered exhibit would tend to impeach her present testimony. The court rejected the exhibit when offered. From the remarks made by the trial judge it appears the ruling was based upon the theory that the exhibit, being a part of the evidence on the preliminary hearing, was immaterial, since the witness was present to testify to the facts. The ruling on that ground was erroneous. A witness may be impeached "by showing that he has made, at other times, statements inconsistent with his present testimony." I.C. § R9–1210. Inconsistent statements made at a preliminary hearing, as well as elsewhere, are material and competent for that purpose.

However, we conclude that defendant was not harmed by the ruling. The testimony of the witness, considered in connection with plaintiff's exhibit 1—a large map of the scene and surroundings—and defendant's proposed exhibit D, shows that the witness' view of the scene would not have been obstructed had the car been parked at the point indicated on the offered exhibit.

■ Defendant assigns as error the admission in evidence of state's exhibit 5, which is a picture purporting to show the front portion of the interior of defendant's automobile as seen through the open right-hand front door. Defendant's objection to the exhibit was based on two grounds: (a) that it was taken the next day after the collision, and (b) that it purports to show an empty whisky bottle, lying on the right-hand portion of the front seat, which one of the state's witnesses testified he did not remember seeing when he looked into the car at the time of the collision.

Five witnesses testified they looked in the open door of the car at the scene of the collision, immediately after it occurred; that they observed a vodka bottle and beer

bottles on the floor; four of them testified the whisky bottle was on the front seat, as shown by the picture, at that time; and two of them testified that the picture correctly portrayed the objects appearing therein, in the same condition, as they were immediately after the collision. The objections were properly overruled. McKee v. Chase, 73 Idaho 491, 253 P.2d 787.

■ Defendant assigns as error the admission of testimony of Dr. Joseph Beeman, a pathologist, as to the alcoholic content of defendant's blood as shown by an analysis made by him of blood taken from defendant about forty minutes after the collision. The doctor testified that the analysis showed a content of .27% of alcohol by weight. Defendant's objection was urged upon the ground that the doctor did not actually weigh the blood sample before and after separating the alcohol therefrom, nor the components after the separation. The doctor, who qualified as an expert, testified at length as to the details of the analysis made by him and that the method employed was a standardized test by which he was able to determine the alcoholic content of blood by weight. The defendant had the benefit of a lengthy cross-examination of the doctor as to both the method and the results obtained. Nothing was developed or offered to show or tend to show that the method employed did not reveal the alcoholic content by weight "as shown by chemical analysis" in compli-

ance with the statute, I.C. § 49–1102. The ruling was correct.

The defendant moved to strike the testimony as to the blood alcohol analysis on the ground that it was immaterial in view of the court's ruling that the presumptions set forth in I.C. § 49–1102 are applicable only in a case where the defendant is charged with the offense of driving an automobile while under the influence of intoxicating liquor. That ruling is immaterial here and we do not determine whether it was correct. The trial court in its instructions did not apply the statutory presumptions to the defendant. The doctor's testimony as to the result of his analysis of defendant's blood served as a basis for his further testimony that, from the results of the test and his personal observation of the defendant while the blood sample was being taken by him, he was of the opinion that the defendant was intoxicated. The motion was properly denied.

■ During the direct examination of defendant, and after he had testified as to his activity at a beer parlor during the period of approximately four hours immediately preceding the collision, the following occurred:

"Q. And is that about what you did in the afternoon while you were there —just playing this board and drinking this beer?

"Mr. Bakes: Object to that as being leading.

"The Court: Yes, Mr. Smith, you will have to refrain from giving the witness the answers.

"Mr. Smith: Well, I am sorry."

Defendant assigns the admonition of the court as error. As we have stated, the trial judge has a wide discretion in the conduct of the trial. A consideration of the entire transcript in this case does not justify an inference that the defendant was prejudiced by the court's remark.

Judgment affirmed.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.