Argued April 8, reargued September 8, reversed and
remanded October 15, 1969

## STATE OF OREGON, *Respondent, v.*
## GEORGE McGILL FOGLE,
*Appellant.*

459 P2d 873

*William L. Lasswell*, Roseburg, argued and reargued the cause and filed a brief for appellant.

*Lauren K. Loveland*, Deputy District Attorney, Roseburg, argued and reargued the cause for respondent. On the brief was Doyle L. Schiffman, District Attorney, Roseburg.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

HOLMAN, J.

Defendant was convicted of negligent homicide arising out of an automobile accident which resulted

in the death of a passenger in a vehicle operated by him.

■ Defendant charges as error the admission into evidence of the result of a chemical analysis of his breath for alcohol. He argues that he did not voluntarily submit to the chemical test because he was not competent to give such consent. He claims he had the right to refuse the test under the Implied Consent Law[①] and that this implies a voluntary submission. While the statute recognizes that a person may refuse to submit to the test, the legislature could hardly have contemplated that it was necessary that there be a completely knowing and understanding submission. If this were the case, the only people who could be tested would be those who were not sufficiently intoxicated to interfere with their mental processes.

■ Defendant also argues that the rule of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966), applies and therefore the "consent" to the test was not voluntary in a constitutional sense. This contention has been put to rest by *Schmerber v. State of California,* 384 US 757, 86 S Ct 1826, 16 L Ed2d 908 (1966). In that case blood was taken from a defendant for an alcohol test over his objection. The court held that his federal Fourth and Fifth Amendment rights, as well as due process, were not violated. The evidence was not considered to be of a testimonial or communicative nature and therefore not within the purview of the Fifth Amendment.

Defendant also contends that the results of the test were not admissible because there was no evi-

[①] ORS 483.634 to 483.646.

dence that the equipment used to analyze defendant's breath had been tested and certified as prescribed by ORS 483.644(1) and (2)(c), which provide as follows:

"(1) Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 483.642, shall be performed according to methods approved by the State Board of Health and by an individual possessing a valid permit to perform such analyses issued by the State Board of Health.

"(2) The State Board of Health shall:

\* \* \* \* \*

"(c) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians."

When the state offered the result of the blood test in evidence, defendant objected to its admission on the ground that the state had not shown that subsection (2)(c) of the above statute had been complied with.

Subsection (1) of the same statute provides that the State Board of Health shall approve the methods of performing the test for alcohol and that the person performing the test must possess a permit to so perform it. The Board approved the method used and the person performing the test in the present case, but the equipment necessary to this method (Sobermeter) is such that it is destroyed upon use and therefore individual units cannot be pre-tested. We do not construe defendant's objection to be sufficiently broad to raise the question whether the State Board of Health had the authority to approve a

method in which the equipment is incapable of being pre-tested.

In the present case the testimony was that the State Police random checked units when a shipment of the Sobermeters was received by them and before they were sent out for use in the field. The State Police also random checked from its stock about every 60 days thereafter. The individual who spot-checks the accuracy of the Sobermeters for the State Police is not authorized to perform this duty by the State Board of Health. The record shows that random units out of each shipment that are received by the State Police are sent to the State Board of Health by the State Police for spot checking but there is no evidence that they were ever tested by the State Board of Health nor is there any testimony that samplings were sent every 60 days thereafter.

Presuming but not deciding that spot-testing of the Sobermeters by the State Board of Health would comply with the requirements of ORS 483.644(2)(c), there is a complete absence of evidence of any sort of testing by them.

The contention has been made that the law presumes that such a statute has been complied with in the absence of a showing to the contrary because of the disputable presumption that official duty has been regularly performed. The following statement concerning the application of such a presumption is found in 9 Wigmore on Evidence (3d ed) 488, § 2534:

> "The general experience that a rule of official duty, or a requirement of legal conditions, is fulfilled by those upon whom it is incumbent has given rise occasionally to a presumption of due *performance of official duty*. This presumption is more often mentioned than enforced; and its scope as

a real presumption is indefinite and hardly capable of reduction to rules.

"It may be said that most of the instances of its application are found attended by several conditions; first, that the matter is more or less in the past, and incapable of easily procured evidence; secondly, that it involves a mere formality, or detail of required procedure, in the routine of a litigation or of a public officer's action; next, that it involves to some extent the security of apparently vested rights, so that the presumption will serve to prevent an unwholesome uncertainty; and, finally, that the circumstances of the particular case add some element of probability." (Emphasis theirs.)

While the presumption is codified in Oregon, there is no reason to conclude that it would be applicable where it would not have been applicable in the absence of codification. It is our conclusion that the present situation is not one to which the presumption is applicable when judged by Wigmore's standards. The Sobermeter in question was used more than 60 days after it was received by the State Police. While there is evidence that random samples were sent to the State Board of Health for testing at the time of the receipt of shipments by the State Police, there is no evidence that the State Board of Health was sent random samples for testing every 60 days thereafter. There can be no probability that the State Board of Health tested something which there is no evidence it ever received. Also see the discussion in *Highway Com. v. Heintz Constr.*, 245 Or 530, 537-39, 423 P2d 175 (1967), concerning the application of the presumption here in question which is codified in ORS 41.360 (15).

■ The suggestion has been made that if the legis-

lature had intended testing and certification of the equipment to be a prerequisite to the admissibility in evidence of the results of the test, it would have made the provisions of subsection (2)(c) a part of subsection (1). The argument is made that compliance or non-compliance by the Board with the provisions of subsection (2)(c) goes only to the weight to be accorded the test and not its admissibility. Had the statute been originally drafted in its present form, one could rightly pause to consider what the legislature intended by such a drafting technique. However, the legislative history offers a perfectly logical explanation for what happened. The test-and-certify provision in subsection (2)(c) was inserted as an amendment after the statute was drafted in its original form. The legislative committee merely neglected to polish its product by properly integrating the amendment into the statute as originally written. The legislative history shows that the principal purpose of the amendment was to prevent the conviction of persons as a result of faulty equipment. It is difficult to think of a reason why the legislature would consider the competence of the operator to be more important than the accuracy of the equipment. The purpose of the amendment can best be effectuated by requiring the state to prove that the equipment used was tested and certified for accuracy by the State Board of Health in compliance with the statute. The burden which such a requirement places upon the state is relatively light when compared to the difficulty a defendant would encounter were the burden upon him to prove non-compliance with the statute.

Most cases have held that strict compliance with similar statutes must be shown as a prerequisite to the introduction of the results of the test. *Jones v.*

*City of Forrest City,* 239 Ark 211, 388 SW2d 386 (1965); *State v. Fox,* 177 Neb 238, 128 NW2d 576 (1964); and *State v. Powell,* 264 NC 73, 140 SE2d 705 (1965), all hold that in order for chemical test evidence to be admissible the state must first establish that the particular test method employed had been officially approved by the state agency. In *Otto v. State,* 172 Neb 110, 108 NW2d 737 (1961), evidence of a blood test was excluded because it was not shown that the pathologist who analyzed the blood had a permit to do so from the Department of Health. In *Kyhl v. Commonwealth,* 205 Va 240, 135 SE2d 768 (1964), it was held that because it was not shown that the needle used in drawing a blood sample had been sterilized as required by statute the results of the test were not admissible.

█ It is our opinion that the results of the breath test should not have been admitted in evidence as there was no proof that the equipment used had been tested for accuracy by the State Board of Health as provided by the statute.

The judgment of the trial court is reversed and the case is remanded for a new trial.

PERRY, C. J., dissenting.

I am unable to agree that the trial court erred in permitting the introduction in evidence of the results of the breath test performed upon the defendant.

ORS 483.644 reads as follows:

"(1) Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 483.642, shall be performed according to methods approved by the State Board of Health and by an

individual possessing a valid permit to perform such analyses issued by the State Board of Health.

"(2) The State Board of Health shall:

"(a) Approve techniques or methods of performing chemical analyses that are satisfactory for determining alcoholic content of a person's blood.

"(b) Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods and techniques of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(c) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians.

"(d) Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods or techniques approved by the board.

"(e) Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the State Board of Health."

It is to be noted that the first paragraph authorizes the use of generally accepted tests for the determination of the alcoholic content of the blood as evidence, providing the method used is one approved by

the State Board of Health, and the test is made by an individual possessing a valid permit from the board to perform the analysis. Therefore, as a prerequisite to admission into evidence, the state must establish these two essential facts. It is admitted that these facts were established by the state in this case.

Paragraph (2) of the act and its subparagraphs are directives to the State Board of Health to perform certain duties that if performed will assure the reasonable accuracy of the breath tests taken. The majority confuse the legislature's authorization of the use of such evidence with a trier of facts' duty in evaluating such evidence.

I am unable to read into this latter section any thought that, if these directives are not performed, the result of a test by a method approved by the State Board of Health and analyzed by a person possessing a valid permit from the board may not be considered as evidence of intoxication.

It is quite clear that the legislature in providing in paragraph (1) of the act that to be valid the analyses shall be performed "according to methods approved by the State Board of Health and by an individual possessing a valid permit," and not providing for periodical examinations of the equipment, was properly leaving the matter of the weight to be given to the tests to the jury. Thus the jury was properly left to evaluate all the facts surrounding the taking of the tests, which would include whether the directives given the State Board of Health to insure the accuracy of the tests had been performed.

Had the legislature intended to make the tests of the equipment a prerequisite to the introduction of breath tests, this requirement surely would have been

included in paragraph (1) the same as the requirement of proof of an approved method and an approved person to analyze the tests for use in civil or criminal proceedings.

It seems to me presumptuous of this court to assume that because the substance of the amendment contained in (2)(c) was not included in paragraph (1) of the act this was an oversight by the legislature. Rather it appears to me to be deliberate. When the legislature empowered the State Board of Health to approve methods by which the alcoholic content in the blood could be determined, it was not limiting the board to the then known methods, but such as would be developed in the future. Therefore, if new methods were developed, the question of the necessity of testing and at what intervals, if necessary, was also left to the board when the new method was approved.

ORS 161.050 provides:

> "The rule of the common law that penal statutes are to be strictly construed has no application to the criminal and criminal procedure statutes of this state. Their provisions shall be construed according to the fair import of their terms with a view to effect their objects and to promote justice."

The purpose of this statute is to permit ascertaining the intent of the legislature so as to make the statute workable and not create bizarre results.

It is clear that the purpose of ORS 483.644 (2) is to provide reasonably accurate tests for determining the alcoholic content of a suspect's blood.

In using the language in ORS 483.644 (2)(c), "* * * before *regular* use * * * and *periodi-*

*cally* thereafter at intervals  *  *  *," (italics supplied) the legislature was referring to equipment having a degree of permanence so that adjustments therein could be made if necessary to keep the test reasonably accurate.

The Mobat test was not developed when ORS 483.644 was enacted. The Mobat test consists of a disposable unit not subject to a direct test. Once it is used it cannot be reused. The legislature, when (2)(c) of this act was passed, had in mind the "breathalizer" test, a permanent device which can be periodically tested and which is used whenever possible.

The evidence in this case discloses that the State Board of Health had approved the Mobat test. It, therefore, follows that, since the "Mobat kit" could not be directly tested every sixty days, the legislature certainly never intended that the Mobat test, once approved by the State Board of Health, should be included in the requirement for periodical testing for there is not even an inference in this case that once the kit is received from the manufacturer it ever deteriorates.

However, even if the majority is of the opinion that the legislature intended that the acts of the State Board of Health are to be considered as a prerequisite to the admission of the results of the tests in evidence, the state made a prima facie showing upon which the trial court would be required to admit the evidence.

There is a rebuttal presumption that official duty has been regularly performed. ORS 41.360 (15). While such a presumption may be overcome by other evidence, unless so overcome "the jury is bound to find according to the presumption." Presumptions of this kind are made a part of the substantive law of

this state. *State of Oregon v. Sengstacken,* 61 Or 455, 468, 122 P 292; *Barclay v. State Bd. of Education,* 244 Or 294, 417 P2d 986; *Sch. Dist. No. 1 v. Linn Boundary Bd.,* 244 Or 207, 416 P2d 656; *Lothstein v. Fitzpatrick,* 171 Or 648, 138 P2d 919.

These statutory presumptions have probative value, that is, they are evidence. *Wiebe v. Seely, Administrator,* 215 Or 331, 335 P2d 379; *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 147 P2d 227; *Bunnell v. Parelius,* 166 Or 174, 111 P2d 88. And they are as applicable in criminal cases as in civil. *State v. Gilmore,* 236 Or 349, 388 P2d 451; *State v. Wendler,* 83 Idaho 213, 360 P2d 697; *State v. Walters,* 61 Idaho 341, 102 P2d 284; *State v. Miller,* 71 Ariz 140, 224 P2d 205.

Since there is a total lack of evidence other than the presumption that official duty was duly and regularly performed, that presumption must prevail.

There is another reason why the trial court correctly ruled. This reason "rests upon the rule 'that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it a presumption of due performance of the prior act.'" *School District No. 17 v. Powell,* 203 Or 168, 189, 279 P2d 492; *Barclay v. State Board of Education,* supra.

So in this case, the officer having been authorized to make the test with equipment authorized to be used, there is a presumption that all other prior necessary acts to validate the test will be presumed in the absence of evidence to the contrary.

For the above reasons I would affirm the judgment.

Goodwin, J., joins in this dissent.