Argued and submitted October 2, 1981, reversed and remanded
for new trial June 9, reconsideration denied July 22,
petition for review denied August 24, 1982 (293 Or 483)

STATE OF OREGON,
*Respondent,*

*v.*

DONNA MILSTEAD,
*Appellant.*

(No. 70-425A, CA A20849)

656 P2d 63

R. Michael Ross, Monmouth, argued the cause and filed the brief for appellant.

James E. Mountain, Jr., Deputy Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Defendant appeals her conviction after trial to the court for driving under the influence of intoxicants. ORS 487.540. She assigns as errors that the trial court (1) heard the case without a jury when there was no written waiver of a jury trial and (2) refused to admit evidence of a. 01 percent breathalyzer test result.

■ Article I, section 11, of the Oregon Constitution and ORS 136.001 require a written waiver of a jury trial. The state confesses error, acknowledging that no formal, written waiver executed by defendant appears in the trial court file. The conviction must be reversed and the case remanded for new trial. *State v. VanLieu,* 48 Or App 671, 617 P2d 914 (1980); *State v. Miller,* 43 Or App 697, 603 P2d 784 (1979).

Because the question will arise on retrial, we address defendant's second assignment of error. After she was arrested for DUII, defendant submitted to a breathalyzer test at the state's request. The result showed her blood alcohol level to be .01 percent. At trial, the arresting officer testified concerning defendant's condition and conduct at the time of her arrest and her performance in field sobriety tests. On cross-examination, defendant attempted to introduce the breath test result to rebut the state's case by showing that the officer who had administered the test was qualified to do so, that the appropriate test procedure had been followed and that the machine used was the one ordinarily used by the sheriff's office. The state objected to the introduction of the breathalyzer result on the ground that defendant had failed to show sufficient foundation for admission of the test result under the Implied Consent Law, ORS 487.805 *et seq,* by showing that the machine used had been tested and certified by a trained technician within the 60 days before her breath test. ORS 487.815(3)(c). The trial court agreed.

The state argues that under ORS 487.815[1] the result of a breathalyzer test is not admissible in DUII cases,

---

[1] ORS 487.815, as applicable to this case, provided:

"(1) Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 487.545, shall be performed according to methods approved

unless it is shown that the test was performed according to approved methods on a certified machine by an individual who has a valid permit. Defendant contends that the requirements of ORS 487.815 apply only when the state seeks to introduce breathalyzer results as proof of a defendant's guilt, not when a defendant offers evidence of a low test result to rebut the state's case.

■ ■   In deciding whether ORS 487.815 should apply to a favorable breath-test result that defendant seeks to introduce, we must first determine the purpose of the Implied Consent Law. Generally, breathalyzer results are offered

---

by the Health Division or the Department of State Police and by an individual possessing a valid permit to perform such analyses issued by the Health Division or the Department of State Police.

"(2) The Health Division shall:

"(a) Approve techniques or methods of performing chemical analyses that are satisfactory for determining alcoholic content of a person's blood, urine or saliva.

"(b) Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods or techniques approved by the division.

"(c) Issue permits to individuals according to their qualifications. Permits shall be subject to termination or revocation at the discretion of the Health Division.

"(3) The Department of State Police shall:

"(a) Approve techniques or methods of performing chemical analyses of a person's breath.

"(b) Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods and techniques of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(c) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians.

"(d) Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods or techniques approved by the department.

"(e) Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the Department of State Police."

by the state to prove a violation of ORS 487.540(1),[2] and their admissibility is restricted only in DUII prosecutions. ORS 487.815 does not apply in any other criminal or civil actions. ORS 487.815(3)(c) places the burden on the state to test and certify the equipment before its regular use and periodically thereafter. Therefore, the statute will generally act to prevent conviction of persons for DUII as a result of faulty equipment or procedures. This is the principal purpose of the statute. *See State v. Fogle,* 254 Or 268, 274, 459 P2d 873 (1969). Clearly, the purpose of preventing conviction on unreliable evidence does not justify excluding the results of tests performed by the state sought to be introduced by a defendant when the test result has an exculpatory tendency. If the state, in fact, believes the test was unreliable, it may offer evidence to that effect in rebuttal. The trier of fact may or may not believe that evidence. Moreover, it does not necessarily follow that a test result is not accurate merely because the machine on which the test was made has not been tested for accuracy within the time specified. The certification requirement is a condition to the test's use by the state to convict, not to its use by defendant to cast doubt upon the state's other proof of intoxication.

Also, a person arrested for DUII may obtain an independent chemical or blood test by a qualified person under ORS 487.810,[3] which is admissible without certification or approval of the test administrators or their methods

---

[2] ORS 487.540(1) provides:

"A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .10 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath, blood, urine or saliva of the person made under ORS 487.805 to 487.815 and 487.825 to 487.835; or

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

[3] ORS 487.810 provides:

"In addition to a chemical test of the breath, blood, urine or saliva administered upon the request of a police officer, a person arrested for driving a motor vehicle upon the highways of this state while under the influence of intoxicants shall be permitted upon request, at the person's own expense,

and machinery. Defects in such tests presumably go to the weight accorded the evidence, not to its admissibility. It would appear logical that the same should be true for state-administered test results offered by a defendant. Because defendant could introduce uncertified private test results, we perceive no purpose to be served by refusing to permit her to introduce uncertified state test results.[4] Similarly, a defendant who has taken a breath test at the request of an officer and obtained a favorable reading would be unlikely to request another test pursuant to ORS 487.810. ORS 487.815 imposes the duty on the state to conduct state-requested tests in compliance with methods approved, and by persons possessing valid permits issued by, the Health Division or the Department of State Police and with equipment tested in accordance with ORS 487.815(3)(c). However, the Implied Consent Law does not require that a defendant prove that a breathalyzer test was administered in compliance with ORS 487.815 before the result can be admitted.

■ ■   The state has the burden of proof in a criminal case, and a defendant has the right to make the state's burden of proof as "heavy as possible by calling to the * * * attention [of the trier of fact] any fact which would raise a not completely unreasonable *possibility* * * * " inconsistent with guilt. *See Byrd v. Lord Brothers,* 256 Or 421, 425, 473 P2d 1018 (1970). Although *Byrd* was a civil case, we perceive no reason why its holding should not apply with equal force in criminal cases. The "fact" defendant seeks to prove is that, in the course of the state's investigation of her condition immediately following her arrest, one of several tests made by the state produced a result consistent with her sobriety. The *possibility* that she was not intoxi-

---

reasonable opportunity to have any licensed physician and surgeon, licensed professional nurse or qualified technician, chemist or other qualified person of the person's own choosing administer a chemical test or tests for the purpose of determining the alcohol content of the person's blood. The failure or inability to obtain such a test or tests by a person shall not preclude the admission of evidence relating to a test taken upon the request of a police officer."

[4] It should also be noted that the breathalyzer is the state's test. The state alone has control of the equipment, methods and operators. It is therefore reasonable to require state compliance with the Implied Consent Law and to exclude breathalyzer evidence in the absence of such compliance. It is not reasonable to impose the same restriction on a defendant who has no such control.

cated is clearly a subject on which she may produce evidence to rebut the state's case. Certainly she can testify that, at the officer's request, she submitted to a breathalyzer test and to her recollection of its result. It follows that the test result itself is admissible when offered to impeach the state's case.

Reversed and remanded for new trial.

**WARDEN, J.,** concurring in part and dissenting in part.

I concur with the majority that the conviction in this case must be reversed, because defendant did not waive her right to a jury trial in writing. I disagree, however, with the conclusion that the result of the test of defendant's breath is admissible without showing that the provisions of ORS 487.815(3)(c) have been complied with and, therefore, dissent from that part of the majority opinion.

The amount of alcohol, if any, in a person's blood at a given time is a question of fact. The purpose of the requirements written into ORS 487.815 is to ensure that, when the determination of a person's blood alcohol level is made by testing his breath, the determination is accurate, that is, it is a fact. Before a fact that is the result of scientific testing is admissible, it must be established that correct testing procedures were followed. This is true for any party in any kind of case; prosecutions for DUII are not an exception. The majority would require the state to meet a stricter standard for admissibility of its scientific evidence than that required of the defendant.

Without citing any authority, the majority asserts that in a DUII trial a defendant may put in evidence the results of an independent chemical or blood test "without certification or approval of the test administrators or their methods and machinery." That statement is at least misleading and, I submit, is inaccurate. Before such evidence may be admitted, a defendant must establish the time and place at which a sample of his blood or other bodily substance was taken, that the time it was taken was reasonably near the time of arrest, that it was taken by a qualified person, that it was analyzed, that the sample

analyzed was the sample taken near the time of the arrest, that the person who conducted the analysis was qualified to do so, that the procedures used in the analysis were procedures recognized as scientifically reliable, and that the procedures were correctly followed.[1]

The majority would treat the evidence of a low level of blood alcohol shown by a breath test as if it were an admission by the state against its interest. It is not.

I would hold that the results of a breath test are available to the defendant, as well as to the state, on the same terms; that is, before they are admitted, a foundation showing compliance with the requirements of ORS 487.815 must be established.

---

[1] Testimony by Senator Elfstrom before the House Judiciary Committee in support of amendments adopted as part of house Bill 1111 (the Implied Consent law) during the 1965 Legislative Session concerned the accuracy of the equipment to be used in breath testing. Senator Elfstrom's testimony was, in part, as follows:

"You cannot buy a pound of meat from your butcher until the state has certified that the scales are accurate. You cannot buy a gallon of gas for your car unless the pump carries the certification of the scales by the state. Yet, this bill proposes that citizens of Oregon be placed in jeopardy of criminal conviction and imprisonment on the evidence of equipment that may have had no testing or adjustment over a period of years. Imagine what a good defense lawyer could do to the arguments advanced by the prosecutor under these circumstances.

"The bill itself should provide the safeguard that the equipment will be regularly tested and adjusted for accurate results.

"I will not take the time for a recitation of the importance authorities attach to this matter of regular inspection. In the literature I have read, there is unanimous agreement with the conclusion of the American Medical Association that * * * and I quote * * * 'The periodic checking of apparatus and its operation is vital.'

"This is the second amendment I propose:

"The State Board of Health shall: 'Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians.' "