359 So.2d 566 (1978)
STATE of Florida, Petitioner,
v.
Silas Edward WILLS, Respondent.
No. 76-1934.
District Court of Appeal of Florida, Second District.
June 7, 1978.
*567 James E. Slater, Asst. State Atty., Sarasota, for petitioner.
Dennis J. Plews, Bradenton, for respondent.
PER CURIAM.
The state petitions for a writ of certiorari to review the trial court's order excluding from evidence the results of a breathalyzer test performed upon respondent Wills. The trial court based its conclusion on its finding that access to the equipment was not limited to authorized technicians as required by administrative rules adopted pursuant to statutory authority. Because there is competent substantial evidence to support the finding, we deny the writ.
Respondent was charged with manslaughter by motor vehicle while intoxicated. He moved to suppress the results of the breathalyzer test administered to him on the ground that at the time the test was performed, the Sarasota City Police Department was not in compliance with the applicable administrative rules concerning accessibility of the breathalyzer equipment. The trial judge treated the motion to suppress as a motion to exclude evidence and granted it, thereby ruling the breathalyzer test results inadmissible.
Section 322.262(3), Florida Statutes (1975) provides:
Chemical analyses of the person's blood or breath, in order to be considered valid under the provisions of this section, must have been performed according to methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department ... is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, ... (Emphasis added.)
Pursuant to this statute, HRS has promulgated rules governing the licensing of technicians, the maintenance of equipment, and the administration of the tests. Fla. Admin. Code Rule 10D-42.07[1] provides in pertinent part:
Chemical test instruments used in the breath method must be kept in a suitable location which shall only be accessible to an authorized technician for administering a chemical test or preventative maintenance check... . Chemical test instruments test kits must be stored in a clean, dry location which is only accessible to an authorized technician for the purpose of actually administering a chemical test or preventative maintenance check. .. . (Emphasis added.)
The evidence at the hearing disclosed that the breathalyzer test was administered to respondent by a licensed technician, Officer Jack Merritt. Officer Merritt testified that the breathalyzer equipment was kept in the booking room, which was admittedly used by many persons who were not breathalyzer technicians licensed by HRS. The officer further testified that the booking room was divided by a partition, and that the breathalyzer equipment was kept in a *568 locked drawer on one side of the partition. On the other side there were gun lockers where off-duty policemen stored their guns. Though these gun lockers were outfitted with locks, the general practice of the policemen was to leave the keys in the locks so they could be readily opened. Officer Merritt had discovered that a key to one of the gun lockers would also open the drawer containing the breathalyzer equipment. Therefore, he would often use the gun-locker key to open the breathalyzer drawer, as he did when respondent was tested, rather than going to the front desk of the police station where the key to the breathalyzer equipment was kept.
Other jurisdictions having statutes conditioning validity of test results on compliance with approved methods and techniques have uniformly held that test results in violation of these approved methods will render the test results inadmissible. See State v. Wallin, 195 N.W.2d 95 (Iowa 1972); Otte v. State, 172 Neb. 110, 108 N.W.2d 737 (1961); State v. Miracle, 33 Ohio App.2d 289, 294 N.E.2d 903 (1973); State v. Gallant, 108 N.H. 72, 227 A.2d 597 (1967); State v. Fogle, 254 Or. 268, 459 P.2d 873 (1969); Jones v. Forrest City, 239 Ark. 211, 388 S.W.2d 386 (1965); State v. Sinclair, 474 S.W.2d 865 (Mo. App. 1971). In some of these cases test results have been held inadmissible for noncompliance with the regulations even where there was no showing of any impropriety in the administration of the test itself. E.g., Otte v. State, supra (defendant's blood was drawn by a registered nurse who was not acting under the direction of a physician as required; test results held inadmissible despite fact that there was no indication that the drawing of blood was improperly performed or the sample improperly handled); State v. Fogle, supra (although there was no indication that the equipment was faulty or that the test was improperly performed, results held inadmissible because certain required routine inspections of the equipment had not been made).
A contrary result was reached in People v. Adams, 59 Cal. App.3d 559, 131 Cal. Rptr. 190 (1976), but that opinion draws a distinction between the California statute and statutes like Florida's which expressly condition the validity of test results on compliance with health department regulations. In view of the plain wording of the statute, we hold that chemical analyses of blood or breath performed in violation of the HRS rules are inadmissible.
The order entered below stated:
From the evidence in this case, it is clear that the equipment used to test the alcoholic content of the defendant's breath was not kept in a location which was only accessible to an authorized technician. Any officer or employee of the police department, the majority of whom are not authorized technicians, could either secure the key to the equipment by opening the gun locker (the key to which was always in the lock) or, more importantly, simply use the key to the gun locker to unlock the equipment. The Court finds this ease of accessibility a violation of Rule 10D-42.07.
Thus, it appears that the trial judge was of the mistaken impression that the official key to the breathalyzer drawer was kept inside the gun locker rather than at the front desk. If this were the only basis for the order, we would be compelled to reverse because we cannot read the rule so strictly as to mean that it must be impossible for anyone other than authorized personnel to obtain the key. Where, as here, the police department had a policy of only permitting licensed persons to use the equipment and the key was presumably under the control of supervisory personnel by virtue of being kept at the front desk, there has been reasonable compliance with the rule.
The problem in this case is that Officer Merritt had found that he could open the drawer containing the breathalyzer equipment with the gun locker key which was usually kept in the lock of one of the nearby gun lockers. While there was no evidence that others had seen him use the key, this may be inferred from the fact that he had done so before and the booking room is a very busy room. In fact, an unlicensed *569 officer was present when Officer Merritt employed the equipment to test the respondent. We cannot say that the court erred in concluding that the recurring use of the gun locker key to unlock the equipment violated the rule of nonaccessibility.
The petition for writ of certiorari is denied.
HOBSON, Acting C.J., and GRIMES, J., concur.
SCHEB, J., dissents with opinion.
SCHEB, Judge, dissenting.
I respectfully dissent.
In the final analysis this case devolves into a judicial interpretation of the word "accessible" in Fla. Admin. Code Rule 10D-42.07. The case is close and the majority has carefully articulated what it believes to be a working definition of the word in this context. However, I feel the majority's interpretation is too narrow.
From our own statutes and the cases from other jurisdictions cited by the majority, I perceive that the purposes of administrative rules governing the chemical analyses of blood or breath are to ensure the accuracy of the testing procedures and to protect the health of those being tested. I think these objectives were served by the procedures used by the police department in this case. The test here was administered by a licensed technician in compliance with the police department's policy that only technicians licensed by HRS could use the breathalyzer equipment. There was no evidence before the trial court indicating that unlicensed personnel had ever taken the key or used the equipment. Nor was there any evidence that the test results were inaccurate in any way. Under these circumstances I would hold that the equipment was accessible to only authorized technicians within the meaning of the Rule. Accordingly, I disagree with the majority and would not hold the results of the breathalyzer test inadmissible.
NOTES
[1] Since slightly modified and renumbered as Fla. Admin. Code Rule 10D-42.24. See also Fla. Admin. Code Rule 15B-3.03, which provides essentially the same thing.