373 So.2d 935 (1979)
Teddy Dale GILLMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 78-1084.
District Court of Appeal of Florida, Second District.
July 6, 1979.
*936 Jack O. Johnson, Public Defender, Bartow, and Douglas A. Wallace, Asst. Public Defender, Bradenton, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Acting Chief Judge.
On this appeal from his convictions for vehicular homicide and causing a death by operation of a motor vehicle while intoxicated, appellant Gillman raises two questions:
1) Whether the trial judge erred in admitting into evidence the blood sample and blood alcohol test results when the sample was not taken in strict compliance with Section 322.261(2)(b), Florida Statutes (1977), and
2) Whether appellant's sentence must be vacated where the sentencing judge imposed a more severe sentence because appellant elected to stand trial rather than plead guilty.
We answer both questions in the affirmative and therefore reverse.
Will Grimes, an employee of Lakeland General Hospital, testified that he withdrew a blood sample from appellant at the request of a police officer at 3:45 A.M. on the night of the accident which led to the instant charges against appellant. The accident occurred at approximately 11:45 P.M. Murle Bozette, the biochemist who analyzed the sample, testified that the blood alcohol level in the sample was .11%, and Dr. Robert Smith, a pathologist and expert in the field of toxicology, opined on the basis of the blood alcohol level in the sample that appellant's blood alcohol level at the time of the accident would have been approximately .18%. An individual is presumed to be intoxicated if his blood alcohol level is .10% or higher. Section 322.262(2)(c), Florida Statutes (1977).
The two state troopers who investigated the accident and another witness present at the scene testified that they smelled alcohol on appellant's person shortly after the accident occurred. Appellant's wife, who was with him most of the evening, and appellant conceded that he had drunk as many as four beers during the course of the evening. However, appellant denied being intoxicated *937 that evening, and there was no further evidence tending to indicate intoxication.
The testimony of Grimes and Bozette, together with a letter from the Department of Health and Rehabilitative Services (HRS) submitted by Grimes, indicated that Grimes had been authorized by HRS to work in the capacity of a clinical laboratory technologist. However, Grimes had not been licensed by the State of Florida as a clinical laboratory technologist or clinical laboratory technician because he had yet to complete the requirement that he work for one year after completion of his technical training.
Section 322.261(2)(b), Florida Statutes (1977) provides:
Only a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician, acting at the request of a peace officer, may withdraw blood for the purpose of determining the alcoholic blood content therein.
Section 322.262 provides in pertinent part:
(2) Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving, or in actual physical control of, a vehicle while under the influence of alcoholic beverages, when affected to the extent that his normal faculties were impaired, the results of any test administered in accordance with § 322.261 and this section shall be admissible into evidence when otherwise admissible... .
* * * * * *
(3) Chemical analyses of the person's blood or breath, in order to be considered valid under the provisions of this section, must have been performed according to methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services is authorized to approve satisfactory techniques or methods, to ascertain the qualifications and competence of individuals to conduct such analyses, and to issue permits which shall be subject to termination or revocation at the discretion of the Department of Health and Rehabilitative Services.
While no Florida cases have addressed this precise issue, we held in State v. Wills, 359 So.2d 566 (Fla.2d DCA 1978), that noncompliance with statutory and regulatory requirements renders the results of chemical analyses of blood or breath inadmissible. Other jurisdictions have held that strict compliance with statutory requirements restricting the class of persons authorized to withdraw blood samples is a condition precedent to the admissibility of the test. Thus, before the results of a blood analysis may be introduced in evidence, the state must affirmatively show that the blood sample was taken by a person meeting the statutory requirements. Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala. Civ. App.), cert. den., Ex parte Redwing Carriers, Inc., 344 So.2d 522 (Ala. 1977); Simolin v. Wilson, 253 Ark. 545, 487 S.W.2d 603 (1972); Lessenhop v. Norton, 261 Iowa 44, 153 N.W.2d 107 (1967); State v. Bruins, 315 So.2d 293 (La. 1975).
The state here failed to establish that Grimes was a member of any of the classes of persons authorized by Section 322.261(2)(b) to withdraw blood samples. Rather, the evidence affirmatively indicates that Grimes was not such an authorized individual. Therefore, notwithstanding the lack of any impropriety in the analysis of the blood sample taken from appellant, we reverse on this point and remand for a new trial. State v. Wills, supra; Otte v. State, 172 Neb. 110, 108 N.W.2d 737 (1961).
At appellant's sentencing hearing, the sentencing judge, who had not presided at the trial, imposed a sentence of ten years in prison. He explained his reasons for the severe sentence at length, pointing out that appellant had had two convictions for driving while intoxicated several years before (in 1970 and 1971), but apparently had not learned his lesson. The judge then went on to make the following comments:

*938 I must candidly tell you this, that for what it is worth and I think you're entitled to know this, the Court's disposition of this matter would have been even more lenient if, in fact, you had acknowledged your responsibility and had entered a guilty plea to the charges as opposed to requiring a jury to determine your guilt, because I can only infer that once the incident happened for whatever reason you continued to be unable to accept responsibility for it. If you had accepted responsibility for it, I think everyone concerned would be considerably more sympathetic, but that was not the case. And I must rely on the verdict of a jury of six individuals who concluded that you were in fact, responsible. And as the facts are related in the presentence investigation, it would appear that you are responsible... .
MR. HALL [defense counsel]: Your Honor, if I may, I don't mean to interrupt. I think I would be remiss if I did not just advise the Court that I feel to some degree responsible for some of the comments that were made. I would also suggest to the Court that I think that the State's, what caused Teddy Gillman to go to trial by, when you involve attorneys in matters, things are scrutinized very closely. And at one point in the course of this trial it did not look as though there would be any, it looked as though the State would not, in fact, be able to prove their case due to some problems that we were aware of. That, I realized your position with Mr. Gillman. Perhaps he should face facts, I think, but I think also we have to be, or I would hope the Court would consider also that there are attorneys whose task it is to look into things like that and to evaluate that situation and to advise a client. And at one point it was, the State's case was in very serious jeopardy on some of those issues. And that to some degree I think, I would hope the Court would consider.
MR. FISCHER [prosecutor]: Your Honor, in response to that. I would merely say that the defendant's posture throughout until the day of conviction was that he was innocent. And perhaps now he has changed his opinion; I don't know; but I'm sure this attorney encouraged him to go to trial. But at no point did he indicate to anybody that he was not guilty, I mean that he was guilty.
MR. HALL: I think that amounts to exercising the fifth amendment right to remain silent which is my position to Mr. Gillman and my advice to him.
THE COURT: I appreciate that, gentlemen, but I also have to take into consideration the Court's experience in dealing with other matters in which individuals have overridden their attorneys' desire to proceed in a procedural tactical matter and have demanded their right to accept responsibility for the acts. And the Court has not seen that on the case of Mr. Gillman.
The law is clear that any judicially imposed penalty which needlessly discourages assertion of the Fifth Amendment right not to plead guilty and deters the exercise of the Sixth Amendment right to demand a jury trial is patently unconstitutional. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). An accused cannot be punished by a more severe sentence because he unsuccessfully exercised his constitutional right to stand trial rather than plead guilty. Baker v. United States, 412 F.2d 1069 (5th Cir.1969); Weathington v. State, 262 So.2d 724 (Fla. 3d DCA 1972); see also State v. Smith, 360 So.2d 21 (Fla 4th DCA 1978); Hankerson v. State, 326 So.2d 200 (Fla. 4th DCA 1976); Davis v. State, 277 So.2d 790 (Fla. 2d DCA 1973).
The sentencing judge's view that a defendant's choice of plea shows whether he recognizes and repents his crime has been eloquently rebutted as follows in Scott v. United States, 136 U.S.App.D.C. 377 at 383-384, 419 F.2d 264 at 270-271 (1969):
Repentance has a role in penology. But the premise of our criminal jurisprudence has always been that the time for repentance comes after trial. The adversary process is a fact-finding engine, not a drama of contrition in which a prejudged *939 defendant is expected to knit up his lacerated bonds to society.
There is a tension between the right of the accused to assert his innocence and the interest of society in his repentance. But in favor of the latter interest only if the trial offered an unparalleled opportunity to test the repentance of the accused. It does not. There is other, and better, evidence of such repentance. The sort of information collected in presentence reports provides a far more finely brushed portrait of the man than do a few hours or days at trial. And the offender while on probation or in prison after trial can demonstrate his insight into his problems far better than at trial.
If the defendant were unaware that a proper display of remorse might affect his sentence, his willingness to admit the crime might offer the sentencing judge some guidance. But with the inducement of a lighter sentence dangled before him, the sincerity of any cries of mea culpa becomes questionable. Moreover, the refusal of a defendant to plead guilty is not necessarily indicative of a lack of repentance. A man may regret his crime but wish desperately to avoid the stigma of a criminal conviction.
The Supreme Court was careful to point out in Sherbert v. Verner [374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965] that "no showing merely of a rational relationship to some colorable state interest would suffice" to justify an infringement of First Amendment rights. Even if we assume that the right to a fair trial may in some circumstances be made costly, the required justification here also must be a paramount goal achievable in no other way. The supposed value of a guilty plea in demonstrating repentance does not meet this test.
Appellant does not contend that the sole reason for the severity of his sentence was his decision to stand trial, and the record clearly indicates that his prior record was of at least equal weight in the formulation of the sentencing judge's decision. Nevertheless, appellant's choice of plea should not have played any part in the determination of his sentence. Consideration of this factor in sentencing appellant was also, in our opinion, reversible error.
REVERSED and REMANDED.
OTT and RYDER, JJ., concur.