## STATE OF FLORIDA v. KATTENGELL
### Case No. 84-021-AC
Eleventh Judicial Circuit, Appellate Division, Dade County
September 21, 1984

### APPEARANCES OF COUNSEL
**G. Bart Billbrough,** Assistant Attorney General, for appellant.
**Andrew C. Pavlick** for appellee.

Before NADLER, KAYE and WETHERINGTON, JJ.

### OPINION OF THE COURT

This is an appeal from an order of the lower court granting appellee's Motion to Suppress the results of a breathalyzer test.

Appellee challenged the introduction of the breathalyzer results on the basis that there was a violation of the Florida Administrative Code Rule 10D-42.24 and Florida Statute 316.1934(3).

The facts of the case reveal that the breathalyzer machine involved in the present case was located at a Metro Dade Police Department Substation 4 in Cutler Ridge, Florida and that the breathalyzer machine itself is located in a locked room. The key to that room is kept on a ring with another key known as the jail cell key and the key ring is kept in a box at the station's reception desk. The operation center Commander was the custodian of the key ring.

The gist of the argument in the lower court was that officers had access to the key ring containing both keys, and that an officer who was putting a person in a jail cell could have access to the breathalyzer room. There was no testimony that, in fact, anyone had utilized that key to enter the breathalyzer room and in any way tampered with the breathalyzer machine.

Appellee relied on *State v. Wills*, 359 Só.2d 566 (Fla 2d DCA 1978) to support his position. The instant case is distinguishable from *Wills* in that in the *Wills* case it was discovered that a key to a gun locker for off-duty policemen was found to also open a locked drawer that contained a breathalyzer machine located in the same room and that officers from time to time would use the gun locker key to gain access to the breathalyzer machine, rather than the key which was assigned to open the breathalyzer drawer. The assigned key was in the custody of the duty Desk Sergeant. In the instant case the key to the breathalyzer machine was on a key ring which also happened to contain the key to the jail cell and that key ring was kept in the custody of the Desk Sergeant or Commander and available only upon request by an authorized officer. In the *Wills* case it appeared that there was a lack of control as to who utilized the gun locker key for purposes of gaining access to the breathalyzer machine, while as in this case the availability of the key to the breathalyzer room was under the control and supervision of the Shift Commander.

The court in *Wills* seemed to rely heavily on

"Section 322.262(3), Florida Statutes (1975) provides;

Chemical analyses of the person's blood or breath, *in order to be considered valid under the provisions of this section*, must have been performed according to methods approved by the Department of Health and Rehabilitative Services . . ."

and also the court relied upon Florida Administrative Code rule 10D-42.07 which provides:

"Chemical test instruments used in the breath method must be kept in a suitable location *which shall only be accessible to an authorized*

*technician* for administering a chemical test or preventative maintenance check. . . Chemical test instruments, test kits must be stored in a clean, dry location *which is only accessible to an authorized technician* for the purpose of actually administering a chemical test or preventative maintenance check . . ."

In July of 1982 the Florida Legislature incorporated Section 322.262, Florida Statutes into Section 316.1934, Florida Statutes and made some changes in the language:

"Chemical analyses of the person's blood to determine alcoholic content or chemical analyses of a person's breath, in order to be considered valid under the provisions of this section, *must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services* and by an individual possessing a valid permit issued by the Department for this purpose. Any *insubstantial differences between approved techniques and actual testing procedures in individual cases shall not render the test or test results invalid.*"

Section 316.1934(3), Florida Statutes

The regulation to accessibility has also been modified:

"Chemical test instruments used in the breath method must be kept in a suitable location which *should* only be accessible to an authorized technician . . ."

Fla. Admin. Code Rule 10D-42.24(1)(a)

It seems clear that the intent of the Legislature was to provide a safeguard for the administering of a breathalyzer test to insure the accuracy of the *testing* procedure and to protect the reliability of the results.

Noting the change in the law from the 1975 Rule to the 1982 Rule, it seems obvious that by changing the requirements to include that the chemical analysis must be performed *substantially* in accordance with the methods approved by the Department of Health and Rehabilitative Services and also in the Florida Administrative Code Rule 10D-42.24(1)(a) to read that the chemical test instruments *should* be only accessible to an authorized technician, it appears the Legislature wanted to withdraw from the restrict effect of strict compliance with the rule.

If the thrust of the law regarding the use of the breathalyzer machine is to safeguard the sanctity of the test result and the reliability of the instrument, then it would appear that the attack in this case

141

should have been focused on any tampering with the machine or the results, and not on whether there was merely a "possibility" that some unauthorized person "could" have access to the machine. Since all things are possible it would take more than mere possibilities to render the test in this case unreliable or suppressable.

Absent a showing of tampering with the breathalyzer machine which in any way would affect the results of any breathalyzer test, it is difficult to reason that the mere commingling of the keys would lead to an inaccurate, unreliable test result. We also note that here, unlike the facts in *Wills*, the keys were under the control and supervision of the Duty Sergeant.

As to the second issue raised by appellee, we see no merit in the argument that the machine was not turned off. The requirement that the machine be turned on a sufficient time before testing begins in order to warm up the heating elements or other parts of the machine to bring it up to operating temperature has been met by leaving the machine on for an extended period of time in order for the next test to be performed, thereby insuring that the machine wil be 100% operational. There does not appear to be any need to have the machine turned off and then turned on again in order to reach operating temperature.

Noting the differences in the statute and in the Administrative Code which governs this issue, the instant case can be distinguished from the *Wills* case upon which the lower court based its ruling, and we would therefore reverse. the Substantial Compliance test also relates to the issue of turning off the machine.

Reversed and Remanded for further action in compliance with this ruling.