561 So.2d 648 (1990)
Michael DONALDSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 89-0483.
District Court of Appeal of Florida, Fourth District.
May 9, 1990.
*649 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for petitioner.
David H. Bludworth, State Atty., and Robert S. Jaegers, Asst. State Atty., West Palm Beach, for respondent.
GARRETT, Judge.
We review a petition for writ of certiorari from a determination of the circuit court, acting in its appellate capacity, which affirmed petitioner's driving under the influence conviction in county court.
The main issue is whether the circuit court departed from the essential requirements of law when it found the state substantially established the proper maintenance and operation of the breathalyzer machine.
Deputy Golson, a qualified breathalyzer operator, testified that the test was performed in accordance with Department of Health and Rehabilitative Services (HRS) procedures. The deputy completed HRS Form 1031, "Breathalyzer Operational Check List," and on the form he wrote the model and serial numbers of the machine used to test the petitioner. The state did not ask the deputy any questions about how the machine was maintained. The trial judge overruled petitioner's objection and allowed the State to enter the test result[1] in evidence.
Breathalyzer test results are admissible into evidence only upon compliance with the statutory provisions and the enacted administrative rules. State v. Bender, 382 So.2d 697 (Fla. 1980). Sections 316.1932(1)(b)1 and 316.1934(3), Florida Statutes (1987), provide that an analysis of a person's breath, in order to be considered valid, must be performed substantially in accordance with methods approved by HRS.
The Smith and Wesson (Electronics Company Manual Model) 900A machine used to perform the test was one type of breath testing instrument approved by HRS. Fla. Admin. Code Rule 10D-42.024(2). Each particular machine must be checked and *650 approved by HRS for proper calibration and performance and registered by its authorized personnel by trade name, model name and serial number. Fla. Admin. Code Rule 10D-42.023.
General rules for breath testing instruments are set forth in Florida Administrative Code Rule 10D-42.024(1). Operational rules for particular machines are established by Florida Administrative Code Rule 10D-42.024(2)(a). Form 1031 outlined those rules. Maintenance rules for particular machines are established by Florida Administrative Code Rule 10D-42.024(2)(b) which by reference incorporates the "procedures outlined in HRS Form 711,... Breathalyzer Check List  Preventive Maintenance Procedures." Florida Administrative Code Rule 10D-42.0211(9) defines "methods" as "a set of instructions detailing the proper operation of an instrument."
We do not find, as argued by petitioner, that the circuit court's stated preference for a defendant to utilize a pretrial motion to suppress to challenge the foundation for admission of the test results was a departure from the essential requirements of law. Whether to admit test results is not a question of which rule of criminal procedure applies, but a question of applying the correct rule of evidence. A court determines preliminary questions concerning the admissibility of evidence. § 90.105 Fla. Stat. (1987). Whether the state has laid the proper foundation for the admission of a breathalyzer test result is a preliminary question which must be determined by the trial judge when the evidence is sought to be introduced.
Nor do we find, as argued by the state, that completion of the operational checklist is itself the proper foundation for admission of the test results which would require the defendant to prove noncompliance with the maintenance provisions, rules or procedures. The state has the burden of proof in a criminal case. The defendant has no such burden.
Nor do we find that the state is entitled to the presumption of due performance of official duty. 9 Wigmore, Evidence § 2534 (Chadbourn rev. 1981). That is to say, if the deputy had the statutory and administrative duty to maintain the machine according to HRS standards, one can presume the deputy performed that duty as required. The case at bar is not one to which the presumption was applicable. The presumption would have relieved the state of its relatively light evidentiary burden and required a defendant to assume the difficult burden of proving noncompliance with the approved HRS procedures. State v. Fogle, 254 Or. 268, 459 P.2d 873, 875-876 (1969).
However, we do find the circuit court departed from the essential requirements of law when it found substantial compliance with HRS maintenance procedures. Neither the general rules nor Form 711 was mentioned during the bench trial. No one testified about the maintenance of the machine nor whether the particular machine was registered with HRS and approved for calibration and performance. Such cannot be considered "insubstantial differences between approved techniques and actual testing procedures." § 316.1934(3), Fla. Stat. (1987). In Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987), our sister court gave a good example of substantial compliance when it upheld the admission of a breathalyzer test result where a maintenance inspection took place thirty-nine days after the last inspection instead of the HRS approved thirty days. See also State v. Wills, 359 So.2d 566, 568 (Fla. 2d DCA 1978). For the state to totally omit evidence concerning half of the approved testing process cannot be substantial compliance. The purpose of the machine maintenance provisions, rules and procedures is to prevent conviction of persons as a result of faulty equipment. "It is difficult to think of a reason why the competence of the operator is more important than the accuracy of the equipment." Fogle, 254 Or. at 268, 459 P.2d at 876.
Accordingly, we grant the petition for writ of certiorari, quash the decision under review, and remand for further proceedings consistent with this opinion.
However, we certify the following question to be of great public importance:

*651 In a section 316.193 prosecution, where the state seeks, over defense objection, to admit the results of a breathalyzer test into evidence, to what extent must the state lay a foundation to show compliance with statutory provisions, administrative rules, and agency procedures governing the licensing of technicians, the maintenance of equipment, and the administration of tests?
DOWNEY, J., concurs specially with opinion.
POLEN, J., concurs in part and dissents in part with opinion.
DOWNEY, Judge, concurring specially.
I concur in the majority opinion authored by Judge Garrett granting certiorari and quashing the order of the circuit court dated December 6, 1988, which affirmed the decision of the County Court of Palm Beach County. At the risk of some redundancy, I would add the following remarks.
Petitioner was charged in the County Court of Palm Beach County with driving under the influence of alcoholic beverages to the extent his normal faculties were impaired and driving with a suspended license. At trial, the state offered in evidence the results of a breathalyzer test administered to petitioner that reflected a reading of 0.11. Petitioner objected to the admissibility of said results on the grounds that the state had not laid a sufficient predicate, in that there was no showing that the breathalyzer machine had been properly inspected and maintained as required by Florida Administrative Code Rule 10D-42.024(2)(c). The trial court overruled the objection, admitted the test results and petitioner was ultimately convicted. On appeal the circuit court affirmed the county court, essentially on the basis that requiring the state to prove that the machine had been maintained as required by law amounted to "send[ing] the State and the Court on a fool's errand," as the circuit judge colorfully characterized it. The circuit court was of the opinion that it was easier for the defendant through discovery to determine whether the state had properly maintained the equipment and administered the test and raise any noncompliance with the regulations by way of a pretrial motion to suppress.
As a matter of fact, in several reported cases, motions to suppress have been utilized as the procedural vehicle to attack the admissibility of test results. For example, in Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987), the defendant utilized the procedure suggested by the lower court to attack the admissibility of the test results via a moton to suppress. The motion contended the results should be excluded because the mandatory inspection and maintenance rule had been violated. The court found the violation de minimus and insubstantial and, thus, covered by the savings clause of section 316.1934(3), Florida Statutes (1985). However, in the present case, for aught we know this machine may never have been inspected or maintained.
Also, in State v. Wills, 359 So.2d 566 (Fla. 2d DCA 1978), the trial court granted a motion to suppress test results because the machine had not been stored or kept in accordance with the administrative rules adopted by 10D-42.024 in that the machine was kept in a booking room of the police station where it was accessible to unauthorized personnel. The rules required it to be kept in a location accessible only to an authorized technician.
While conceding that such a procedure would certainly suffice and perhaps save the state some effort in preparing and presenting its case, we should reject the suggestion that the burden is upon the defendant in a criminal case to resort to that pretrial procedural move. His objection to admissibility for lack of a sufficient predicate at the time the test results are offered against him is sufficient.
The Implied Consent Law, set forth in Chapter 322 of the Florida Statutes, provides for determining the alcoholic content of one's blood. In order to adequately protect the citizenry from being convicted through the use of faulty equipment and unskilled operators, special rules were envisioned by the legislature including rules and regulations to be adopted by the Department *652 of Health and Rehabilitative Services (HRS) regarding the administration of the test and the type and maintenance of equipment to be used. Pursuant to said authority, HRS adopted certain regulations embodied in the Florida Administrative Code, among which is rule 10D-42.024, which provides the type of breathalyzer machine to be used, the manner and place of storage of said machine, and the frequency with which it is to be inspected and maintained to determine, among other things, its accuracy.
In the present case, with a reading only one-tenth of a point over the reading required for a presumption of intoxication, one might well be concerned about the proper calibration and other aspects of the machine. The state adduced proof of compliance with other HRS requirements such as the qualifications of the operator and the type of machine used, but nothing regarding the inspection and maintenance thereof, which brings to mind the comment by the court in State v. Fogle, 254 Or. 268, 459 P.2d 873, 876 (1969), that "[i]t is difficult to think of a reason why the legislature would consider the competence of the operator to be more important than the accuracy of the equipment." Apropos, also, of the lower court's comment that it was easier for the defendant to prove non-compliance than to require the state to do so, the Fogle court stated: "The burden which such a requirement [that the state prove compliance] places upon the state is relatively light when compared to the difficulty a defendant would encounter were the burden upon him to prove non-compliance with the Statute." 459 P.2d at 876.
In State v. Bender, 382 So.2d 697 (Fla. 1980), the Supreme Court of Florida considered the constitutionality of the statutes setting up the Implied Consent Law and its implementation. Therein the court said:
It must be recognized that the implied consent provision of chapter 322 and the approved testing methods and presumptions contained therein are all interrelated.
When the prosecution presents testimony in evidence concerning motor vehicle driver intoxication which includes an approved alcohol test method by a properly licensed operator, the fact finder may presume that the test procedure is reliable, the operator is qualified, and the presumptive meaning of the test as set forth in section 322.262(2) is applicable. The test results are admissible into evidence only upon compliance with the statutory provisions and the administrative rules enacted by its authority. Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979); State v. Wills, 359 So.2d 566 (Fla. 2d DCA 1978). The presumptions are rebuttable, and a defendant may in any proceeding attack the reliability of the testing procedures, the qualifications of the operator, and the standards establishing the zones of intoxicant levels.
Id. at 699 (emphasis supplied).
The Bender court references a number of other states that have passed statutes similar to Florida's and makes particular mention of some of them that, having mandated approved testing methods, hold, as does Florida, that noncompliance with those requirements makes the test results inadmissible. Among the cases cited it appears that it is necessary for the state to lay a foundation demonstrating compliance with the statutory and administrative requirements in order to admit the test results in evidence. State v. Gallant, 108 N.H. 72, 227 A.2d 597 (1967); State v. Bruins, 315 So.2d 293 (La. 1975); State v. Sinclair, 474 S.W.2d 865 (Mo. App. 1971). See also State v. Paul, 437 S.W.2d 98 (Mo. App. 1969); Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976).
Accordingly, it is apparent that the HRS rules surrounding the inspection and maintenance of the breathalyzer machine, as well as the manner and method of administering the test, must be substantially complied with to make the results admissible in evidence, and the burden to lay the foundation to demonstrate admissibility is upon the state if challenged.
POLEN, Judge, concurring in part and dissenting in part.
I concur with the facts of this case as set forth in the majority opinion. I further *653 agree that the trial court's reference to a motion to suppress as being the proper vehicle to test the admissibility of the breathalyzer evidence does not constitute a departure from the essential requirements of law. While it is my view that a better procedure for bringing this to the attention of the trial court for resolution prior to trial would be a motion in limine, the majority and I agree that it is up to the trial court to determine preliminarily the question of admissibility of evidence.
However, I must dissent from the majority opinion wherein it finds that the circuit court departed from the essential requirements of law when it found substantial compliance with HRS maintenance procedures. As the trial court appropriately noted in its well-reasoned order:
The real issue presented by this case is how many hoops does the State have to jump through in order to lay a sufficient predicate to admit the breathalyzer.
It would be virtually impossible for the state, in presenting evidence of compliance with the rules and regulations pertaining to maintenance of the breathalyzer equipment, to negate every possible element which the defense might assert as a flaw in compliance with maintenance procedures. With the availability of Florida Rule of Criminal Procedure 3.220 (at least as such rule existed at the time of the pretrial proceedings in this case), defense counsel was entitled to almost unlimited discovery. Counsel could thus ascertain whether there was any fatal flaw in the manner in which this particular breathalyzer was maintained and utilized in Mr. Donaldson's case. While the defense does not have the burden of proving anything vis-a-vis noncompliance with HRS regulations, at some point the state must be able to say, "We have made a prima facie case as to showing compliance, and now the burden shifts to the defendant to show noncompliance." I submit that is what occurred in the instant case. Deputy Golson testified that in administering the breathalyzer to appellant, he followed an operational checklist provided by HRS. At that point, the burden shifted to appellant to show noncompliance with HRS maintenance regulations. Appellant failed to meet this burden. Therefore, the trial court properly admitted the evidence of the breathalyzer test results.
I believe the majority's reliance on State v. Bender, 382 So.2d 697 (Fla. 1980) is misdirected. In Bender, the supreme court held:
When the prosecution presents testimony in evidence concerning motor vehicle driver intoxication which includes an approved alcohol test method by a properly licensed operator, the fact finder may presume that the test procedure is reliable, the operator is qualified, and the presumptive meaning of the test as set forth in section 322.262(2) is applicable. The test results are admissible into evidence only upon compliance with the statutory provisions and the administrative rules enacted by its authority. Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979); State v. Wills, 359 So.2d 566 (Fla. 2d DCA 1978). The presumptions are rebuttable, and a defendant may in any proceeding attack the reliability of the testing procedures, the qualifications of the operator, and the standards establishing the zones of intoxicant levels. In addition, other competent evidence may be presented to rebut the presumptions concerning whether the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired.
Id. at 699 (emphasis added).
I would therefore find that the trial court properly admitted the evidence of the breathalyzer test results and that the circuit court did not depart from the essential requirements of law in affirming the county court verdict. I would deny the petition for writ of certiorari.
I join with the majority as to the question certified to the supreme court being of great public importance.
NOTES
[1] The 0.11 percent reading highlights the importance of accurate testing procedures since a "0.10 percent or more by weight of alcohol in the person's blood [is] prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired" but a less than 0.10 percent reading does not give rise to the presumption. F.S. 316.1934(2)(b) and (c), Fla. Stat. (1987).